UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KARI ANN HAMILTON,

Petitioner,

v.

KATHLEEN ALLISON, et al.

Respondents.

No.  2:22-cv-1901 CKD P

ORDER

Petitioner is proceeding pro se with a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  The parties have consented to have all matters in this action before a United States Magistrate Judge.  See ECF No. 19; 28 U.S.C. § 636(c).

On December 21, 2016, petitioner was convicted by a Sacramento County jury of several offenses, including attempted murder, and was sentenced to 13 years imprisonment.  ECF No. 22-4 at 291.  Following an appeal, 8 months of the sentence was stayed.  Id. & ECF No. 22-22 at 29. Petitioner presents four grounds for relief.  For the reasons which follow, the petition for writ of habeas corpus is denied.

I. Background

The California Court of Appeal summarized the evidence presented at trial as follows:

> [Jeffrey] Caylor and Hamilton were boyfriend and girlfriend and lived together along with Hamilton's teenage son.  Caylor and Hamilton ran a smoke shop together.  [Vineet] Parnami was their

1

landlord and ran a convenience store in the same strip mall. Caylor and Hamilton were both abusive toward Parnami, yelling at him, disparaging him, and telling him to get out of their country. Caylor and Hamilton each had such run-ins with Parnami about 20 to 30 times. Caylor told Parnami that Caylor had killed people and would come after Parnami and his family if Parnami did not do what he wanted him to do. In November 2012, Parnami found footage from his security camera showing Hamilton giving a handgun to Caylor as they left the smoke shop. Parnami evicted Hamilton and Caylor in December 2013 for failure to pay rent.

On March 16, 2014, Caylor, Hamilton, and Hamilton's son went to Home Depot in Sacramento. Hamilton and her son went inside, while Caylor stayed outside in a green Buick owned by Hamilton's mother. Also at Home Depot were [Hassan] Alawsi and his sister. Alawsi's sister was wearing a flowing blouse, with black pants and a black head scarf. After Hamilton and her son came back out to the green Buick and got into the car with Hamilton in the front passenger seat, Caylor drove next to the car where Alawsi was shutting the trunk. Caylor said something in an angry tone to Alawsi, pointed Hamilton's handgun at Alawsi, and shot him. Alawsi died as a result of the shooting.

Later the same evening, Caylor and Hamilton went to the home of [Lillian] Thury-Taylor, who was sitting outside her residence in a car she had rented, a white Toyota. First Caylor and then Hamilton approached Thury-Taylor, telling her that she needed to go inside because there was danger. When Thury-Taylor went inside, Caylor followed her into the house and pointed a handgun at her. He told her he wanted her car. He pistolwhipped and choked her, and he left. Thury-Taylor found that the key to the white Toyota was gone. Later, after returning home from getting treatment, Thury-Taylor discovered that the white Toyota had been taken.

The next morning, on March 17, 2014, Caylor drove to Parnami's business in the white Toyota, with Hamilton and her son as passengers. Hamilton was in the front passenger seat. Parnami was outside the store. He had not seen Caylor and Hamilton since he evicted them in December 2013. Caylor drove within five feet of Parnami, pulled Hamilton's handgun from between the seats, pointed it at Parnami, and pulled the trigger three times. Parnami heard three clicks, but the gun did not fire. Caylor said something like "You're lucky I haven't killed you," or "You're lucky it didn't go," or "You're lucky I still like you," or "You're lucky," and drove away. As he was driving away, Caylor said, "I almost got him."

Caylor, Hamilton, and Hamilton's son headed north for Idaho in the white Toyota, stopping to buy more ammunition. They were detained in Chico later that day. A search of the white Toyota revealed Hamilton's handgun and the package of ammunition, unopened. A live round was chambered, and additional rounds were in a magazine.

A firearms expert testified that he test-fired Hamilton's handgun three times using ammunition he had in the lab, and the handgun fired

each time.  He also testified that, if there was a problem with the ammunition, it was possible the handgun would not fire when the trigger was pulled even though the handgun was in working condition.  Tests of the handgun showed that it did not make a clicking sound when the trigger was pulled with the safety on but made a loud clicking noise when the safety was off. . .

The jury convicted Hamilton of: (1) being an accessory to murder (§ 32); (2) first degree robbery of Thury-Taylor (§ 211) with a finding that a principal was armed with a firearm (§ 12022, subd. (a)(1)); (3) first degree burglary of Thury-Taylor (§ 459) with a finding that a principal was armed with a firearm (§ 12022, subd. (a)(1)); (4) vehicle theft (§ 10851, subd. (a)); and (5) attempted murder of Parnami (§§ 664/187, subd. (a)) with a finding that a principal was armed with a firearm (§ 12022, subd. (a)(1)).

ECF No.  22-22 at 3-6.

Other than the reduction in sentence noted above, petitioner's appeal was rejected.  Id. at 29.  Petitioner sought review of the Court of Appeal's decision in the California Supreme Court.  ECF No. 24.  The petition was denied.  ECF No. 25.

II. Standard for Habeas Relief

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ of habeas corpus is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.2d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following limitation on the granting of federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;

or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different, as the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011). Here, the last reasoned decision was issued by the California Court of Appeal. ECF No. 22-22.

III.  Analysis

   A.  Fines

In her first claim, petitioner challenges the imposition of fines, fees, and assessments. Because the court can only grant a petition for writ of habeas for confinement which violates

/////

4

federal law, 28 U.S.C.§ 2254(a) the court does not have jurisdiction with respect to petitioner's first claim.  See Munoz v. Smith, 17 F.4th 1237, 1245 (9th Cir. 2021).

B.  Withdrawal Instruction

Petitioner claims the trial court violated her constitutional rights by instructing jurors as to the defense of withdrawal as an aider and abettor.  Jurors were instructed as follows:

> A person who aids and abets a crime is not guilty of that crime if he or she withdraws before the crime is committed. To withdraw, a person must do two things:
>
> 1. He or she must notify everyone else he or she knows is involved in the commission of the crime that he or she is no longer participating.  The notification must be made early enough to prevent the commission of the crime.
>
> And, 2. He or she must do everything reasonably within his or her power to prevent the crime from being committed.  He or she does not have to actually prevent the crime.
>
> The People have the burden of proving beyond a reasonable doubt that the defendant did not withdraw.  If the People have not met this burden, you may not find the defendant guilty under an aiding and abetting theory.

ECF No. 22-4 at 177.

Petitioner argues withdrawal was not her defense against any crime charged and there was no evidence of withdrawal.  Petitioner claims the withdrawal instruction permitted jurors to find petitioner guilty of aiding and abetting as long as she did not withdraw. ECF No. 14 at 32.  Not so.  The jurors were specifically instructed as to the elements of aiding and abetting and informed that they had to find in the affirmative as to the elements in order to find petitioner guilty based upon aiding and abetting.  Id. at 176.  Withdrawal was accurately described as defense to aiding and abetting if the aiding and abetting elements were found true.  Since the withdrawal instruction caused petitioner no harm, her second claim must be rejected.  See Brecht v. Abrahamson, 507 U.S. 619, 631 (1993) (habeas relief not available unless trial error had "substantial and injurious effect or influence in determining the jury's verdict").

C.  Video of Gun Transfer

As described above, the video provided by Vineet Parnami from his security camera which showed petitioner giving a handgun to Caylor as they left the smoke shop in November

2012 was played for jurors.  As with the prior claim, the court finds a lack of prejudice.  While the transfer of the gun depicted in the video was approximately 16 months prior to petitioner and Jeffrey Caylor's apparent crime spree, petitioner makes no convincing argument as to prejudice and the court finds none especially since petitioner does not dispute that the gun used by Caylor belonged to her.  Petitioner's third claim is rejected.

D.  Insufficient Evidence to Support Attempted Murder

Finally, petitioner asserts there was not sufficient evidence presented to the jury that petitioner possessed the requisite intent for aiding and abetting attempted murder.  The California Court of Appeal addressed this claim as follows:

> When an appellant contends the evidence was insufficient to support a conviction, the ""relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."' [Citation.]  '[The] appellate court must view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citations.] 'Evidence is sufficient to support a conviction only if it is substantial, that is, if it "'reasonably inspires confidence'" [citation], and is "credible and of solid value."'" (*People v. Fromuth* (2016) 2 Cal.App.5th 91, 103-104 (*Fromuth*).)  We affirm unless the appellant establishes "'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)
>
> "An aider and abettor is one who acts 'with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' [Citation.]  Neither mere presence at the scene of a crime, nor the failure to take steps to prevent a crime, is alone sufficient to establish that a person is an aider and abettor. Such evidence may, however, be considered together with other evidence in determining that a person is an aider and abettor. [Citation.]" (*In re Jose T.* (1991) 230 Cal.App.3d 1455, 1460, italics omitted.)
>
> "[A] person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and [with] (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." (*People v. Beeman* (1984) 35 Cal.3d 547, 561 (*Beeman*).)
>
> "When the definition of the offense includes the intent to do some act or achieve some consequence beyond the actus reus of the crime [citation], the aider and abettor must share the specific intent of the

6

perpetrator. By 'share' we mean neither that the aider and abettor must be prepared to commit the offense by his or her own act should the perpetrator fail to do so, nor that the aider and abettor must seek to share the fruits of the crime. [Citation.] Rather, an aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime. [Citations.]" (*Beeman*, *supra*, 35 Cal.3d at p. 560, italics omitted.)

"'Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.' [Citation.]" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054.)

To prove attempted murder, the prosecution must establish the defendant took a direct but ineffective step toward killing the victim and the defendant intended to kill the victim. (CALCRIM No. 600.) Therefore, to prove Hamilton aided and abetted the attempted murder of Parnami, the prosecution had to establish, as relevant here, Hamilton and Caylor shared an intent to kill Parnami and by act or advice Hamilton aided, promoted, encouraged, or instigated the attempted murder. The trial court did not instruct the jury concerning the natural and probable consequences theory, so the only way to get to aiding and abetting attempted murder was for Hamilton to share Caylor's intent to kill.

The shared intent of Caylor and Hamilton to kill Parnami is manifest in the events leading up to the attempt, the facts of the attempt itself, and the evidence discovered after the attempt.

Hamilton had a handgun and gave Caylor access to that gun. Both Hamilton and Caylor displayed their animus toward Parnami while they were running the smoke shop in the building owned by Parnami. They yelled at him and used racial and ethnic slurs against him. Hamilton was with Caylor just the day before the Parnami incident when Caylor shot and killed Alawsi using Hamilton's handgun.

As Parnami was outside his business, Caylor drove up with Hamilton in the front passenger seat. Caylor pointed Hamilton's handgun at Parnami and pulled the trigger three times. While the handgun did not fire, it made a clicking sound indicative of the safety not being engaged. Caylor said Parnami was lucky, and, as Caylor drove off, added, "I almost got him."

When Caylor and Hamilton were arrested in Chico, the handgun was still with them. A live round was in the chamber, and other rounds were in the magazine. The ammunition bought after the attempt on Parnami was unopened.

This evidence supports reasonable inferences that Hamilton willingly and continuously let Caylor use her handgun. Caylor disliked Parnami and intended to kill Parnami after having killed another apparent foreigner the day before. Hamilton also disliked Parnami, knew Caylor intended to kill Parnami, and let Caylor use

7

the handgun for that purpose.  Hamilton also intended to kill Parnami as an aider and abettor to Caylor.

Nonetheless, Hamilton argues that the evidence was insufficient to support her conviction for attempted murder of Parnami because there was no evidence the handgun was loaded at the time of the attempt.  To the contrary, the handgun was obviously loaded when Caylor shot Alawsi, and it was loaded when Caylor and Hamilton were arrested later on the day of the attempt against Parnami. That evidence was sufficient for the jury to conclude the handgun was loaded or that Caylor and Hamilton believed it was loaded when Caylor aimed the handgun at Parnami and pulled the trigger. Furthermore, the fact that they went and bought ammunition after the attempt on Parnami supports an inference that they attributed the apparent malfunction of the handgun to absence of ammunition when, in fact, it was some other malfunction.  Even if the evidence also supported an inference that the handgun was not loaded and that Caylor and Hamilton believed it was not loaded, those possible inferences do not invalidate the opposing and reasonable inferences drawn by the jury because we evaluate the evidence and draw reasonable inferences in the light most favorable to the judgment. (*Fromuth*, supra, 2 Cal.App.5th at pp. 103-104.)

Hamilton also argues the evidence was insufficient to support an inference that Hamilton encouraged or aided Caylor in the attempt to kill Parnami.  Again, her argument is really just that there was evidence from which the jury could have inferred she did not encourage or aid Caylor.  For example, she observes there was no evidence of a conversation between Caylor and Hamilton about killing Parnami.  There was no evidence Hamilton handed the handgun to Caylor just before he pointed it at Parnami and pulled the trigger. And there was no evidence of prior violence by Caylor or Hamilton against Parnami, even if there was evidence that they did not like him. These arguments, however, do not establish that the jury's inferences were unreasonable.

Accordingly, the evidence was sufficient to support the jury's verdict that Hamilton aided and abetted the attempted murder of Parnami.

ECF No. 22-22 at 23-26.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  For a challenge to the sufficiency of the evidence, the court reviews the evidence in the light most favorable to the prosecution and determines whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  A federal court may only grant habeas relief upon finding the state court decision rejecting the claim was an

8

objectively unreasonable application of Jackson and Winship to the facts of the case. Ngo v. Giurbino, 651 F.3d 1112, 1115 (9th Cir. 2011).

The standard of review of insufficiency of evidence claims identified by the Court of Appeal is not in conflict with either Winship or Jackson. Furthermore, the Court of Appeal and California Supreme Court's rejection of petitioner's insufficiency of evidence claim were not contrary to clearly established federal law as determined by the Supreme Court, do not involve an unreasonable application of clearly established federal law as determined by the Supreme Court, and are not based on an unreasonable determination of the facts. Therefore, habeas relief is precluded by 28 U.S.C. § 2254(d).

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's amended application for a writ of habeas corpus (ECF No. 14) is DENIED;

2. This case is closed; and

3. The court declines to issue the certificate of appealability referenced in 28 U.S.C. § 2253

Dated:  February 27, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
hami1901.157

9